Filed 1/20/26  P. v. Pina CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL PINA,<br><br>        Defendant and Appellant. | C103218<br><br>(Super. Ct. No. 78605) |

Defendant Daniel Pina appeals from an order denying his petition for resentencing under Penal Code section 1172.6 on a 1992 conviction for first degree murder.[1]  After holding an evidentiary hearing, the trial court found beyond a reasonable doubt that defendant was guilty of murder.

---

[1]  Undesignated statutory references are to the Penal Code.

On appeal, defendant contends: (1) the trial court erred by not considering new evidence that false testimony was presented at trial in violation of his due process rights; (2) the court abused its discretion and violated his constitutional rights at the evidentiary hearing by excluding evidence impeaching the credibility of a material witness at trial; (3) there is insufficient evidence to support a finding that he committed murder; and (4) cumulative errors at his 1992 trial require reversal of his conviction. We affirm the trial court's order.

## I. BACKGROUND

### A. *Factual Background*

On November 15, 1985, at about 9 a.m., the victim, Alejandro Ferrel, was found in his cell (No. 30) with his cellmate, defendant, and co-defendant Angel Valencia. Co-defendant Valencia appeared to be bleeding from his mouth and had a lot of blood on his face and blood splatter on one pant leg. Co-defendant did not have any visible wounds on his hands. Defendant had cuts on his right thumb, right palm, and an abrasion on his right calf. Ferrel had stab wounds to his head, neck, upper chest, chest, abdomen, and thighs. Ferrel ultimately died as a result of complications from the multiple stab wounds.

We have taken our recitation of facts from the trial court's statement of facts in its written decision denying defendant's petition. So has defendant, but he limited his recitation of facts to those summarizing his own testimony at trial. In it, he testified to stabbing Ferrel repeatedly during a fight and claimed Ferrel was armed with a knife. Defendant testified that co-defendant only entered the cell after the fight was over.

A jury found both defendants guilty of first degree murder and found true that both defendants personally used a deadly and dangerous weapon—a stabbing instrument—during the commission of the offense. In a bifurcated proceeding, the trial court found true that both defendants had previously been convicted of murder. (§ 190.2, subd. (a)(2).) The prosecution elected not to proceed with the death penalty phase of the trial. Accordingly, the trial court sentenced defendant to life in prison without the possibility of

parole plus one year for the personal use enhancement consecutive to the prison sentence he was already serving.

B. *The Direct Appeal*

In 1995, this Court affirmed the convictions of both defendants in an unpublished opinion. (See *People v. Valencia et al.* (Apr. 24, 1995, C014374) [nonpub. opn.] (*Valencia*).) The opinion begins with a sentence that defendant quotes multiple times in his briefing: "This case hinges on the opening and closing of a cell door." (*Ibid.*) As such, understanding defendant's current appeal requires providing background for that statement. The opinion explained that Sergeant Powers testified that, during the general morning tier release, he saw inmate Hernandez pause in front of a cell and then close the door. Powers sent Officer Felix to investigate. Felix testified Hernandez was standing in front of cell No. 30, and the cell door was closed. According to Powers, Felix secured the release bar, which would have secured a closed door. Felix testified he was unsure if he secured the bar, but believed he had.

Defendant argued on direct on appeal that the trial court had abused its discretion in denying a motion to dismiss brought by the prosecution three months into trial. (*Valenica, supra*, C014374.) This court explained the relevant background facts as follows:

"After Officers Powers and Felix testified at trial, the prosecutor informed the court of the discovery of the existence of Officer Laurin, the gun-rail officer. This heretofore unidentified officer was a possible witness to the events surrounding the stabbing.

"The prosecutor outlined his concerns concerning this belated discovery to the court. The prosecutor's theory of the case centered on the door to cell No. 30 being closed at the time Officer Felix observed Hernandez looking into the cell. The door remained closed until Powers arrived at the cell and found the three men inside.

"Laurin's version of events contradicted and undermined the scenario, and the prosecutor expressed concerns that one or more of the correctional officers was 'not being absolutely honest' about whether the door to cell No. 30 was opened or closed.[2] Laurin's statements about filling out and delivering a report which did not appear in the Department of Corrections files also troubled the prosecutor.

"The prosecutor told the court had the prosecuting authorities known of the contradiction in the key testimony of the guards, it was unlikely the case would have been filed. According to the prosecutor, he had a reasonable doubt he could prove his theory of the case: Valencia entered cell No. 30 before Hernandez closed the door. The prosecutor informed the court, 'I don't have the confidence in what I need to have—the confidence in order to not only prosecute but to ask a jury to return a death verdict. I don't have the confidence in my law enforcement officer witnesses that I need in order to do this. I do not know whether that door was closed or not.' The court asked the prosecution to consider the matter further.

"The next day the prosecutor moved to dismiss the case based on insufficient evidence and ethical considerations. The prosecutor stated, '[I]t's not necessarily—well, a matter of who is right and who is wrong, but who is—who is truthful and who is untruthful. This is a contradiction on a major point that can't be resolved as an error in perception. [¶] If we militate toward perception, all appearances appear to be in the better eyes of perception to the eyes of Officer Laurin. [¶] I tried to predicate this case from the get-go on the experience and credibility of Officer Powers. In my mind, that

---

**2** "The prosecution described his dilemma to the court: 'I am faced with the situation that a law enforcement officer has either committed perjury in this trial or Laurin is about to commit perjury. And I am . . . not prepared to say, although in my mind I believe—I certainly have a feeling; but feelings don't mean anything. [¶] I cannot get over that aspect of the direct contradiction of the door being opened versus closed and locked.' "

is,—significantly has been shattered, and I'm not prepared to ask a jury to believe Officer Powers.'

"The court reminded the prosecutor that he would be precluded from arguing his personal belief to the jury and that credibility of witnesses is within the purview of the jury. The court also informed the prosecutor that inconsistent testimony by various witnesses does not necessarily reflect that a witness is lying. Finding sufficient evidence to proceed to trial, the court found it could not 'in good conscience' grant a motion to dismiss for insufficient evidence." (*Valenica, supra*, C014374.)

In rejecting defendant's argument on direct appeal, this court explained, "the prosecution did not, as defendants contend, seek a dismissal based upon testimony known by the state to be perjured. The prosecutor acknowledged his difficulty in reconciling the various scenarios presented by the guards. However, the prosecutor did not inform the court that he was certain one of his witnesses was about to commit perjury. The prosecutor told the court[,] 'I don't want to suggest that Officer Laurin is telling the truth. I can't resolve who is. I don't know.' " (*Valenica, supra*, C014374.)

We found the trial court acted within its discretion in denying the prosecution's motion to dismiss: "The prosecutor never voiced a belief that if he were to continue, the result would be perjured testimony. Instead, the prosecution stated he was not sure whose version of events to believe, and he expressed doubt about whether his theory of the case was still tenable. The trial court found the conflict in the guards' testimony as to whether the door of cell No. 30 was opened or closed was a factual issue for the jurors to resolve.

"The trial court carefully considered the prosecution's motion. The court discussed the motion with the prosecutor and considered defendant's written memorandum. The court ultimately concluded it would not be in the furtherance of justice to dismiss the case. In addition to the guards' conflicting scenarios, the jury had circumstantial evidence before it which established that both defendants were found inside the cell with the fatally wounded victim; both defendants wore bloody clothing and

had cuts and abrasions consistent with having been in a knife fight; and officers found two knives in the cell.  After reviewing the evidence, the court found sufficient evidence to proceed to trial.  We agree with the court's assessment."  (*Valenica, supra*, C014374.)

C.    *Petition for Resentencing*

1.    *Statutory Background*

Effective January 1, 2019, "the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which narrowed or eliminated certain forms of accomplice liability for murder.  (See Stats. 2018, ch. 1015.)"  (*People v. Curiel* (2023) 15 Cal.5th 433, 440.)  In particular, Senate Bill 1437 "narrowed the application of the felony-murder rule" and "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine."  (*Curiel, supra*, pp. 448, 449.)

"Senate Bill 1437 also created a procedural mechanism for those convicted of murder under prior law to seek retroactive relief.  [Citations.]  Under section 1172.6, the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' made by Senate Bill 1437.  (§ 1172.6, subd. (a)(3).)  The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief.  (*Id*., subd. (c).)  'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citations.]'  [Citation.]  Otherwise, the court must issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3))."  (*People v. Wilson* (2023) 14 Cal.5th 839, 869, fn. omitted.)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (§ 1172.6, subd. (d)(3).)

6

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).) The prosecutor and petitioner "may also offer new or additional evidence to meet their respective burdens." (*Ibid*.)

2. *Procedural Background*

In 2022, defendant filed the petition for resentencing under former section 1170.95 (now section 1172.6) that gave rise to his current appeal. The People, through the district attorney, opposed the petition on the ground defendant had failed to make a prima facie showing of eligibility because the record of conviction established he was ineligible for relief as a matter of law. Defendant filed a reply brief that argued he was not ineligible for relief because the jury was instructed on liability under the natural and probable consequences doctrine.

The trial court found that defendant had made a prima facie showing of entitlement to relief and ordered the district attorney to show cause as to why defendant should not be granted relief under section 1172.6.

The prosecution's prehearing brief argued defendant was still guilty of murder as the actual killer and the direct perpetrator of express or, alternatively, implied malice murder. The prosecution thereafter submitted a revised brief stating it had been made aware that Sergeant Powers had been convicted for subsequent misconduct and it no longer felt it could rely on his trial testimony. As such, the revised brief made the same arguments but excluded Powers's trial testimony.

Defendant's response brief argued only that his conviction must be reversed on the basis that the prosecution knowingly introduced false testimony by a material witness at

7

trial.[3]  This argument was based on the statements at trial surrounding the motion to dismiss and defendant's representations regarding subsequent federal court proceedings.

The prosecution filed a reply to defendant's response explaining that a claim of *Napue* error was not a basis for relief in a section 1172.6 proceeding, and it was not relying on the complained-of evidence to demonstrate defendant was still guilty of murder beyond a reasonable doubt under current law.  The prosecution argued defendant's claim was more properly brought in a petition for writ of habeas corpus and relied on matters outside the record—Sergeant Powers's subsequent conduct at another facility and subsequent conviction in federal court for that conduct.

Defendant filed a response to the People's reply that attached as an exhibit a document that purports to be a brief on behalf of the United States in an appeal in a federal case against Powers and another officer.  Defendant also attached as an exhibit a document that purports to be a special master's report.[4]

At the evidentiary hearing, neither side called witnesses but rather relied on portions of the trial court record and arguments in their briefing.  The court stated that it issued the order to show cause because there was ambiguity in the jury instructions in

---

[3]  Defendant cited *Giglio v. U.S.* (1972) 405 U.S. 150 and *Napue v. Illinois* (1959) 360 U.S. 264 (*Napue*) as well as other authorities to support this argument.  On appeal, both parties refer to the claim as one of *Napue* error.  So do we.  It signifies the following: " 'Under well-established principles of due process, the prosecution cannot present evidence it knows is false and must correct any falsity of which it is aware in the evidence it presents, even if the false evidence was not intentionally submitted.' " (*People v. Morrison* (2004) 34 Cal.4th 698, 716.)

[4]  Both documents are unsigned, undated, and bear no indication they were filed. Additionally, as the prosecutor noted at the evidentiary hearing, " '[w]hile courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files.' " (*People v. Hernandez* (2011) 51 Cal.4th 733, 741, fn. 3.)

that the jury was instructed on aiding and abetting and the natural and probable consequences doctrine but there was no target offense that was defined for either.

The court denied defendant's petition in a written ruling. The court explained that its limited jurisdiction did not extent to the due process and constitutional theories advanced by defendant that "are not within the ambit of section 1172.6 relief. The Court does not reach the merits of petitioner's claims that are outside the scope of section 1172.6 in this order." The court found, beyond a reasonable doubt, that defendant was guilty of implied malice murder of Ferrel. The court set forth a statement of facts derived from the redacted trial transcript excluding the testimony of Sergeant Powers.

The court explained the basis for this conclusion as follows: "Here, the act whose natural consequence was dangerous to life was Pina repeatedly stabbing Ferrel with an 8 inch knife. The Court is satisfied that Pina would have known that repeatedly stabbing someone with an 8 inch knife in the torso could result in that person's death. [¶] Likewise, the Court is convinced beyond a reasonable doubt that Pina knew that his conduct endangered Ferrel's life. Pina engaged Ferrel in a knife fight until Ferrel had been stabbed so many times that Ferrel capitulated. In the Court's view, Pina repeatedly stabbing Ferrel is a manifestation of Pina's conscious disregard for Ferrel's life. [¶] The Court has considered Pina's age in reaching its decision. The Court was not persuaded that Pina lacked the experience, perspective or judgment to preclude a finding that he acted with implied malice. [Citation.] Moreover, the Court is satisfied that Pina was Ferrel's actual killer, and as such, is not entitled to section 1172.6 relief."

## II. DISCUSSION

On appeal, defendant contends: (1) the trial court erred by not considering new evidence that false testimony was presented at trial in violation of his due process rights; (2) the court abused its discretion and violated his constitutional rights at the evidentiary hearing by excluding evidence impeaching the credibility of a material witness at trial; (3) there is insufficient evidence to support a finding that he committed murder; and (4)

9

cumulative errors at his 1992 trial require reversal of his conviction. These assertions are unavailing.

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) But where the issue is a question of law, we review the issue independently. (*Ibid*.)

We note, as a general matter, "[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Defendant's first two arguments are not supported by any reference to the record where he sought to introduce any evidence. The court did grant the People's request to exclude Sergeant Powers's testimony, but defendant cites nowhere that he sought to have it admitted. Indeed, the admission of Powers's testimony by itself would have been unhelpful to defendant. Defendant did object to the prosecution's argument that his *Napue* claim could not be addressed in this proceeding. The court agreed with the prosecution and defendant has failed to demonstrate this conclusion was error. In a section 1172.6 evidentiary hearing, "[t]he trial court acts as an independent fact finder to determine whether the prosecution has met its burden [citation] but the trial court's factual determinations are limited to 'issues made relevant by the changes to the law effected by [the amendments].' " (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.) "The mere filing of a [former] section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of [former] section 1170.95 suggests it was intended to provide redress for allegedly

10

erroneous prior factfinding. . . . The purpose of [former] section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; see also *People v. Strong* (2022) 13 Cal.5th 698, 715 [The Legislature did not intend "to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing"].) The trial court found defendant personally killed defendant and acted with malice. His assertion of *Napue* error does not implicate any changes to the law made by Senate Bill 1437. As such, the trial court did not err in concluding defendant's evidentiary hearing under section 1172.6 was not a vehicle for raising his claim of *Napue* error.

Likewise, we cannot address a claim that cumulative error in defendant's 1992 trial requires relief in an appeal from the denial of a section 1172.6 petition. "[T]he limited jurisdiction afforded by section 1172.6 does not provide the trial court broad jurisdiction to correct alleged errors in the original judgment on alternative grounds." (*People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1122.)

Finally, defendant's cursory claim that insufficient evidence supports a finding that he committed murder is unpersuasive. The conclusion that defendant murdered Ferrel does not turn on Sergeant Powers's testimony because defendant testified he stabbed the victim repeatedly. As indicated by the trial court's analysis, defendant's testimony coupled with the medical evidence in this case supplied substantial evidence to support a finding that he was guilty of murder.

### III.  DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/S/

RENNER, J.

We concur:

/S/

ROBIE, Acting P. J.

/S/

BOULWARE EURIE, J.